FIRST NATIONAL LEASING & FINANCIAL CORPORATION, Plaintiff-Appellee, *v.* JAMES B. ZAGEL, Director, Department of Revenue, Defendant-Appellant.

Fourth District   No. 15530

Opinion filed January 21, 1980.

GREEN, J., specially concurring.

William J. Scott, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellant.

Routman, Lawley & O'Hara, Ltd., of Springfield, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

In an administrative review action, the circuit court of Macoupin County reduced the Illinois Department of Revenue's (Department) assessment of use tax liability against the taxpayer, First National Leasing and Financial Corporation. The court allowed the taxpayer to take a

rolling stock exemption for the period of July 1, 1973, through August 11, 1974. The Department has appealed the grant of that exemption.

The taxpayer purchased tractors and trailers which it leased for periods in excess of one year to Hulcher Emergency Services, Inc. Hulcher used this equipment to remove or rerail railroad cars after derailments and train accidents and to haul goods taken from incapacitated rail cars to their destinations or to alternate transportation.

The Department's audit for the period of July 1, 1973, through May 1976 resulted in a notice of use tax liability being issued against the taxpayer. The taxpayer's claim to the rolling stock exemption under section 3 of the Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.3(b)) was denied because the taxpayer had no records showing that each vehicle had been used as an interstate carrier for hire.

At an administrative hearing held by the Department in 1977, employees of Hulcher Emergency Services, Inc., testified that their crews usually transfer goods from derelict to usable railroad cars. Sometimes the goods are hauled to their destination, which, infrequently, is across State lines. The goods hauled are almost always in interstate commerce. Again, the taxpayer could provide no documentation of specific instances when its equipment was used to haul goods for hire. The taxpayer claimed the rolling stock exemption only for the period wherein it possessed a certificate of temporary authority from the Interstate Commerce Commission to haul goods in interstate commerce. The hearing officer upheld the Department and denied the rolling stock exemption. He found that the taxpayer did not present any evidence showing that the tractors and trailers were used to haul goods for hire.

The trial court reversed the decision of the hearing officer for the period of July 1, 1973, through August 11, 1974 (the period when the taxpayer possessed the certificate of temporary authority). The court indicated that oral testimony was sufficient competent evidence and that the taxpayer was not required to keep written records in order to qualify for the rolling stock exemption.

The issue on appeal is whether the trial court's decision was against the manifest weight of the evidence. We conclude that the trial court's decision was erroneous since the taxpayer did not present sufficient evidence to rebut the Department's *prima facie* case of tax liability.

■■ The taxpayer presented as evidence its certificate of temporary authority for interstate carrying and the oral testimony of Hulcher's workers. We do not find the general accounts of these witnesses, who said that goods were infrequently carried across the State lines by the taxpayer's vehicles, to be a sufficient indication of interstate commerce. We are left with the certificate of temporary authority. The hearing officer determined the taxpayer to be engaged in interstate commerce

during the time it held the certificate. However, the nature of the taxpayer's business remained unchanged after the certificate expired. Thus, the certificate of temporary authority, by itself, is insufficient evidence of interstate activity.

The taxpayer relies on *Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill. App. 3d 166, 336 N.E.2d 170, as authority. In *Burlington*, the first district found that intrastate activities of railroad equipment were so intertwined with interstate travel or goods and people involved in interstate transportation that the equipment assumed an interstate character.

The United States Supreme Court in *Department of Revenue of Washington v. Association of Washington Stevedoring Companies* (1978), 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388, has provided an alternative to *Burlington* by holding that a State can properly tax a wholly intrastate activity even though that activity is part of interstate commerce. This decision allows a State to narrow the scope of the use tax rolling stock exemption. Thus, the taxpayer's vehicles are properly subject to the use tax even though they are used in connection with goods moving in interstate commerce.

The Department argues that the taxpayer failed to comply with the record-keeping requirements of section 7 of the Retailers Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 446). This section is expressly incorporated by reference in section 12 of the Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.12), which adopts certain provisions of the Retailers Occupation Tax Act insofar as they are consistent with the Use Tax Act.

We find that the document requirements of the Retailers Occupation Tax Act do not apply because they conflict with section 11 of the Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.11), which, in pertinent part, directs every person in Illinois using property purchased at retail to keep "* * * such records, receipts, invoices, and other pertinent books, documents, memoranda and papers as the Department shall require, in such form as the Department shall require." We interpret section 11 of the Use Tax Act as requiring the Department to promulgate document requirements specifically for the Use Tax Act. If the requirements of the Retailers Occupation Tax Act are to apply here, the Department must specifically state this in a regulation or rule.

We find the Department of Revenue's assessment of use tax liability was improperly modified by the trial court. Accordingly, we reverse the decision of the trial court which granted the rolling stock exemption.

Reversed.

MILLS, P. J., concurs.

Mr. JUSTICE GREEN, specially concurring:

The issue for us to decide is not whether the trial court's determination was contrary to the manifest weight of the evidence but whether the trial court properly determined that the Department's determination was contrary to the manifest weight of the evidence. I conclude that the trial court was in error in its determination and agree that its judgment should be reversed.

Section 3(b) states that the stock must be "moving in interstate commerce" in order for the use to be exempt. The statutorily stated purpose of the exemption of section 3 is to prevent "multistate taxation." *Burlington* placed strong emphasis upon the question of whether the imposition of the tax there would violate the commerce clause thus indicating that the legislature intended that the exemption of section 3(b) be extended only so far as mandated by the commerce clause. I agree with at least that much of *Burlington*, but do not agree with that court's restrictive interpretation of commerce clause limitations on the taxing power.

*Burlington* ruled that imposition of a use tax without apportionment on railroad equipment such as switch engines and commuter cars used to transport goods and passengers moving in interstate commerce would be a federally impermissible burden on interstate commerce even if the equipment never left Illinois. However, that logic was refuted by *Department of Revenue of Washington*. There an excise tax upon the occupation of stevedoring imposed upon a firm operating only in the State of Washington but handling goods in interstate and foreign commerce was upheld. The court stated that a State may tax the instrumentalities of interstate commerce so long as (1) an obvious nexus between the State and the objects taxed exists, and (2) the tax is fairly apportioned so that there is no unreasonable multistate taxation of the instrumentalities of interstate commerce.

The majority opinion is not clear as to whether it is holding (1) that the Department could have found that there was no out-of-State use of the equipment, or (2) that even if there was out-of-State use the rolling stock exemption was still inapplicable. If there was no out-of-State use of the equipment, analogy to *Department of Revenue of Washington* would make the exemption inapplicable even though the equipment was used to aid the movement of interstate commerce. However, even if State lines were crossed in use of the equipment, the oral evidence made clear that it was infrequent and on an irregular basis. Under these circumstances there is no real threat of multistate taxation, and the commerce clause would not require that the use tax be apportioned to the use in Illinois. A case on point is *Central R.R. Co. v. Pennsylvania* (1962), 370 U.S. 607, 8 L. Ed. 2d 720, 82 S. Ct. 1297. In that case the court upheld State imposition of a

property tax on the full value of freight cars belonging to a railroad operating entirely within the State but running regularly on other railroads outside the taxing State but not on a fixed schedule. The court concluded that there was no indication that any other State had acquired taxing jurisdiction of the cars. The case at bar is factually even less of a commerce clause problem. Here the use of the rolling stock in other States was not only unscheduled but was at most very irregular. In the case at bar there was no indication that any other State was in a position to burden the equipment with an additional use tax, and in order for a taxpayer to establish a commerce clause violation the burden is upon him to show the threat of disproportionate multistate taxation. *Pan Am World Airways, Inc. v. Duly Authorized Government of Virgin Islands* (3d Cir. 1972), 459 F.2d 387; *McKinnis Travel Service, Inc. v. State* (1970), 78 Wash. 2d 229, 472 P.2d 392.

Since no commerce clause violation has been shown, it would be constitutionally permissible for Illinois to impose an unapportioned use tax. Since I am persuaded by *Burlington* that the General Assembly intended to fully tax equipment's use whenever constitutionally permissible, I concur with the result the majority reaches.