(No. 63151.—
(No. 63228.—

SEARLE PHARMACEUTICALS, INC., Appellant, v. THE DEPARTMENT OF REVENUE, Appellee.— CATERPILLAR TRACTOR CO. *et al.*, Appellants, v. J. THOMAS JOHNSON, Director of Revenue, Appellee.

*Opinion filed June 10, 1987.—Rehearing*
*denied October 5, 1987.*

456

GOLDENHERSH, J., took no part.

Sidley & Austin, of Chicago (Henry L. Mason III, J. Douglas Donenfeld and Lisa A. Hausten, of counsel), for appellant Searle Pharmaceuticals, Inc.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

Edward C. Rustigan, William A. Schmalzl and Fred M. Ackerson, of Mayer, Brown & Platt, of Chicago, for *amicus curiae* Deere & Company and Reynolds Metals Company.

Jay A. Lipe, D. Glenn Ofsthun and Marc A. Primack, of Chicago (Rooks, Pitts & Poust, of counsel), for *amicus*

*curiae* United States Steel Corporation.

Don S. Harnack, Wilber H. Boies, John E. Gaggini and Charles J. Mack, of Chicago (McDermott, Will & Emery, of counsel), for appellant Caterpillar Tractor Co. *et al.*

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

Edward C. Rustigan, William A. Schmalzl and Fred M. Ackerson, of Mayer, Brown & Platt, of Chicago, for *amici curiae* Deere & Company and Reynolds Metals Company.

Jay A. Lipe, D. Glenn Ofsthun and Marc A. Primack, of Chicago (Rooks, Pitts & Poust, of counsel), for *amicus curiae* United States Steel Corporation.

JUSTICE RYAN delivered the opinion of the court:

These consolidated appeals involve various challenges to the constitutionality of the 1977 amendment of section 203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E)) (the Act), which provided that any corporation which was a member of an affiliated group of corporations filing a consolidated Federal income tax return, incurring a net operating loss on a separate Illinois income tax return basis, be deemed to have made the election provided in section 172 of the Internal Revenue Code (26 U.S.C. sec. 172(b)(3)(C) (1982)), that is, to relinquish the entire carryback period and only carry forward the loss.

Because the relationship between the Illinois Income Tax Act and the Internal Revenue Code is of primary importance to an understanding of this cause, we will briefly summarize the applicable statutory provisions in force during the relevant period. Under the Internal Revenue Code, corporations which are members of a parent-subsidiary affiliated group of corporations may file a single Federal income tax return for a taxable year in which all of their tax items are consolidated. (26 U.S.C. sec. 1501 (1982).) Once a valid consolidated return election has been filed, the affiliated group must continue to file consolidated Federal returns in subsequent taxable years unless it has secured permission from the Internal Revenue Service to discontinue the filing of such returns. 26 U.S.C. secs. 1501, 1502 (1982); Treas. Regs. sec. 1.1502—75(c) (1983).

Under the Illinois Income Tax Act, a tax measured by *net income* is imposed on every corporation for each taxable year ending after July 31, 1969, on the privilege of earning or receiving income in or as a resident of this State. (Ill. Rev. Stat. 1979, ch. 120, par. 2—201(a).) Net income is that portion of the taxpayer's *base income* for such taxable year which is allocable to this State less the standard allowable exemption. (Ill. Rev. Stat. 1979, ch. 120, par. 2—202(a).) A corporation's base income is equal to the taxpayer's *taxable income* for the taxable year for Federal income tax purposes, subject to certain adjustments not directly relevant here. (Ill. Rev. Stat. 1979, ch. 120, pars. 2—203(b)(1), (b)(2).) *Taxable income* is defined by the Act as "taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(1).) If a corporate taxpayer has filed a consolidated Federal income tax return, however, the Act provides that *taxable income* is "determined as if such corporation had filed a

*separate* return for federal income tax purposes for the taxable year and each preceding taxable year for which it was a member of an affiliated group." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E)).) In addition, by virtue of the amendment to section 203(e)(2)(E) effective September 12, 1977, the corporate taxpayer's *separate taxable income* is computed as if the election provided by section 172(b)(3)(C) of the Internal Revenue Code had been in effect for all such taxable years. (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E).) Section 172 of the Internal Revenue Code allows a net operating loss to be *carried back* to reduce taxable income for the three taxable years preceding the taxable year in which the loss was sustained. (26 U.S.C. secs. 172(a), (b)(1)(A) (1982).) Section 172 further provides that "[a]ny taxpayer entitled to a carryback period *** may *elect to relinquish the entire carryback period* with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election, once made for any taxable year, shall be irrevocable for that taxable year." (Emphasis added.) (26 U.S.C. sec. 172(b)(3)(C) (1982).) The combined operation of these provisions thus serves to establish *Federal taxable income* (U.S. Form 1120, line 30) as the starting point upon which Illinois income tax liability is computed for a corporate taxpayer. Thus, the mandatory election to relinquish the carryback period applies only to corporations of an affiliated corporate group that files a consolidated Federal return and not to corporations of an affiliated corporate group that file separate Federal returns.

Section 506 of the Illinois Income Tax Act provides that, in the event the taxable income, any item of income or deduction, or the income tax liability reported in a Federal income tax return is altered by amendment, recomputation, or redetermination, and such alteration reflects a change or settlement with respect to any

item(s) entering into the computation of the taxpayer's *base income*, the taxpayer shall notify the Department of Revenue of such change in the form of an amended return. (Ill. Rev. Stat. 1983, ch. 120, par. 5—506(b).) Section 911 of the Act provides that where notification of an alteration is required by section 506(b), a claim for refund may be filed with the Department of Revenue, limiting the amount recoverable to any overpayment resulting from the recomputation of the taxpayer's *base income* for the taxable year after giving effect to the item(s) reflected in the alteration. (Ill. Rev. Stat. 1979, ch. 120, par. 9—911(b)(1).) These sections thus authorize a refund of State taxes when a change in Federal taxable income resulting from a net operating loss carryback effects a change in State base income.

In cause No. 63151, Searle Pharmaceuticals, Inc. (Searle), the taxpayer, is a wholly owned subsidiary of G.D. Searle & Company (G.D. Searle) (the parent). Pursuant to the privilege set forth in section 1501 of the Internal Revenue Code, G.D. Searle and its subsidiaries consented to the filing of a consolidated United States Corporation Income Tax Return (U.S. Form 1120). For the taxable year ending December 31, 1977, G.D. Searle and its consolidated subsidiaries, including Searle, filed a consolidated Federal corporate income tax return reporting a net operating loss of $22,919,533 (U.S. Form 1120, line 30), later amended to $23,935,337. G.D. Searle and its subsidiaries timely *carried back* this consolidated net operating loss for Federal income tax purposes and deducted it in arriving at consolidated Federal taxable income for the taxable year ending December 31, 1974.

As discussed above, a corporation whose taxable income is included in a consolidated Federal income tax return with its subsidiaries is required to recompute its Federal taxable income on a separate return basis to arrive at its State base income. Searle accordingly pre-

pared an Illinois Corporation Income Tax Return (Form IL-1120) for 1977, attaching *pro forma* copies of schedules L, M-1, M-2, and page 1 of U.S. Form 1120 as if it had filed a separate Federal return. Illinois Form IL-1120 requires, as the starting point for the calculation of Illinois base income, that Federal taxable income be entered on line 1, and states specifically that this amount is to be taken from line 30 of the U.S. Federal Form 1120. Searle thus reported for State tax purposes (Form IL-1120, line 1) $7,005,123 of the consolidated net operating loss as its State base income.

In compliance with sections 506(b) and 911(b)(1) of the Act, Searle filed an amended Illinois corporate income tax return for 1974, attempting to carry back its 1977 income loss ($7,005,123), as reflected on its *pro forma* Federal return, to reduce its 1974 Federal taxable income for Illinois tax purposes (*i.e.*, base income) from $4,951,137 to zero, and seeking a State tax refund of $103,193. On that same date, Searle filed an amended Illinois corporate income tax return for 1975, attempting to carry back the remainder of its 1977 *pro forma* return loss to reduce its 1975 Federal taxable income for Illinois tax purposes (*i.e.*, base income) from $4,946,610 to $2,892,624, and seeking a State tax refund of $44,032.

The defendant, the Illinois Department of Revenue (Department), denied Searle's claims for refunds for the taxable years ending 1974 and 1975. A hearing officer rejected Searle's claims for refund, concluding that the plain language of section 203(e)(2)(E) of the Act as amended in 1977 required that any corporation which is a member of a parent-subsidiary affiliated group of corporations electing to file a consolidated Federal corporate income tax return be deemed to have made the carryback relinquishment election set forth in section 172 of the Internal Revenue Code (26 U.S.C. sec. 172(b)(3)(C)

(1982)), such that net operating losses may only be *carried forward* for purposes of reducing State tax liability.

Upon denial of its claims for refund, Searle filed a complaint for administrative review in the circuit court of Cook County challenging the constitutionality of section 203(e)(2)(E) of the Act as a denial of equal protection (U.S. Const., amend XIV; Ill. Const. 1970, art. I, sec. 2) and uniformity of taxation (Ill. Const. 1970, art IX, sec. 2). The circuit court, finding (1) that there was a set of facts that justified the classification between parent-subsidiary affiliates filing a *consolidated* Federal corporate income tax return and affiliates filing *separate* Federal corporate income tax returns, and (2) that the classification bore a rational relationship to a legitimate legislative purpose, affirmed the decision of the hearing officer and upheld the constitutionality of section 203(e)(2)(E).

The appellate court, with one justice dissenting, affirmed the circuit court's judgment. (140 Ill. App. 3d 248.) The appellate court majority concluded that the disparity in tax treatment between a parent-subsidiary affiliated group electing to file a consolidated Federal corporate income tax return and affiliated corporate group electing to file *separate* Federal income tax returns was rationally related to the legitimate State interests of preserving appropriated financial resources, facilitating budgetary planning, aiding in administrative convenience, and preventing a corporate taxpayer's use of the carryback election to reduce its Illinois taxes to a maximum extent. (140 Ill. App. 3d 248, 252-56.) We allowed Searle's petition for leave to appeal pursuant to our Rule 315 (103 Ill. 2d R. 315).

In cause No. 63228, Caterpillar Industrial Products, Inc., Caterpillar of Delaware, Inc., Caterpillar Americas Company, Towmotor Corporation, and Production Technology, Inc., are wholly owned subsidiaries of the Cater-

pillar Tractor Company (Caterpillar) (the parent). Pursuant to the privilege set forth in section 1501 of the Internal Revenue Code, Caterpillar and its subsidiary corporations consented to the filing of a consolidated Federal income tax return. For the taxable years ending December 31, 1982 and 1983, the returns showed net operating losses of $587,009,772 and $594,503,892, respectively. Caterpillar and its subsidiaries timely carried back those consolidated net operating losses for Federal income tax purposes and deducted them in arriving at consolidated Federal taxable income for the taxable years ending December 31, 1979, 1980, and 1981.

In accordance with section 203(e)(2)(E) of the Act, Caterpillar and its subsidiaries had filed Illinois Corporation Income Tax Returns for 1979, 1980, and 1981, attaching separate *pro forma* Federal income tax returns, and had paid Illinois income taxes for those years in the aggregate amounts of $14,566,670, $20,186,364, and $20,337,130, respectively. After having carried back losses for Federal tax purposes for 1981 and 1983, Caterpillar and its subsidiaries timely filed separate claims for refund of 1979, 1980, and 1981 Illinois income taxes with the Department of Revenue, asserting that they were entitled to carry back and deduct 1982 and 1983 consolidated net operating losses in the taxable years 1979, 1980, 1981. The defendant, the Director of the Department of Revenue, denied the refund claims on the ground that section 203(e)(2)(E) of the Act as amended in 1977 prohibited the carryback of net operating losses by parent-subsidiary affiliated groups electing to file a consolidated Federal corporate income tax return.

Caterpillar and its subsidiaries commenced an action in the circuit court of Peoria County seeking a declaratory judgment that the disparity in tax treatment arising from the "deemed" election of carryback relinquishment made for those corporations voluntarily choosing to file a

consolidated Federal corporate income tax return, as provided in section 203(e)(2)(E) of the Act, violated the equal protection clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and the equal protection and the uniformity of taxation provisions of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 2; art. IX, sec. 2). The circuit court, relying on *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1986), 140 Ill. App. 3d 248, upheld the constitutionality of section 203(e)(2)(E). A direct appeal to this court was taken pursuant to our Rule 302(b) (94 Ill. 2d R. 302(b)). We consolidated the Searle and Caterpillar causes for review and allowed Reynolds Metals Company, Deere & Company, and United States Steel Corporation to file *amicus curiae* briefs in support of Searle's and Caterpillar's (the taxpayers) position.

The appellate court, in *Searle,* decided only the equal protection issue and did not address the claim that section 203(e)(2)(E) of the Act violated the uniformity requirement of article IX, section 2, of the Illinois Constitution of 1970. We here base our decision on the uniformity clause of the Illinois Constitution and hold that the 1977 amendment to section 203(e)(2)(E) is violative of article IX, section 2, of our constitution. We need not determine whether that section of the Act violates the equal protection requirements of the State and Federal constitutions.

Under both the equal protection and uniformity arguments, the taxpayers' challenge is that the 1977 amendment to section 203(e)(2)(E) unreasonably, arbitrarily, and impermissibly discriminates against a parent-subsidiary affiliated corporate group which files a consolidated Federal corporate income tax return. Specifically, they argue that there is no rational basis for allowing a corporation which is a member of an affiliated corporate group filing a *separate* Federal income tax return the privilege of

carrying back net operating losses while denying that same carryback privilege to a corporation which is a member of an affiliated corporate group filing a *consolidated* Federal income tax return. The Department, in response, argues that the amendment is not unconstitutional since a set of facts—administrative convenience and fiscal planning—can be conceived to sustain the classification created by the provision.

It is well established that "the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment." (*Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 526, 3 L. Ed. 2d 480, 484, 79 S. Ct. 437, 440.) While this constitutionally imbedded concept of equal protection limits State and local taxing power, that provision in the fourteenth amendment "was not intended to compel the States to adopt an iron rule of equal taxation." (*Bell's Gap R.R. Co. v. Pennsylvania* (1889), 134 U.S. 234, 237, 33 L. Ed. 892, 895, 10 S. Ct. 533, 535.) Equal protection does not require identity of tax treatment. *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359, 35 L. Ed. 2d 351, 354, 93 S. Ct. 1001, 1003.

In sustaining State taxes against an equal protection challenge, the Supreme Court has, on occasion, used language that seems to place on one challenging the tax a burden extremely difficult to meet. The Supreme Court, in varying language in different cases, has stated "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky* (1939), 309 U.S. 83, 88, 84 L. Ed. 590, 593, 60 S. Ct. 406, 408; see also *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006; *Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 528, 3 L. Ed. 2d 480, 485-86, 79 S. Ct. 437, 441;

*Carmichael v. Southern Coal & Coke Co.* (1937), 301
U.S. 495, 509, 81 L. Ed. 1245, 1253, 57 S. Ct. 868, 872.

The equal protection clause is a general limitation
upon State legislative bodies, and the Supreme Court
has noted "in taxation, even more than in other fields,
legislatures possess the greatest freedom in classifica-
tion." (*Madden v. Kentucky* (1939), 309 U.S. 83, 88, 84
L. Ed. 590, 593, 60 S. Ct. 406, 408.) Article IX, section
2, of the Illinois Constitution of 1970, however, is not a
general limitation on legislative action but is addressed
specifically to the General Assembly's power to classify
for nonproperty tax purposes. Section 1 of article IX of
the 1970 Illinois Constitution specifically provides that
the General Assembly may raise revenue "except as lim-
ited or otherwise provided in this constitution." The ap-
parent grant of the power to tax in section 1 of article
IX is not in fact a grant of power but is merely an affir-
mation of the sovereign power of the State and the in-
herent power of the General Assembly to tax. See
Young, *The Revenue Article of the Illinois Constitution
of 1970—An Analysis and Appraisal*, 1972 U. Ill. L.F.
312, 312-14.

Thus, the power to tax in our case and in general
could have been exercised by the General Assembly even
though there were no constitutional provisions such as
that contained in section 1 of article IX of our constitu-
tion, and in the absence of limitations such as those in
section 2 of article IX, the taxing power would, nonethe-
less, be subject to the limitations of the equal protection
clauses of the State and Federal constitutions. But the
equal protection clause, as noted, is only a general limi-
tation on the legislature's power to tax and, as indicated
above, the courts, to a great extent, defer to legislative
judgment, particularly in classifications relating to tax
matters. By contrast, section 2 of article IX of the Illi-
nois Constitution of 1970 is a specific limitation on the

General Assembly in the exercise of its taxing power. See 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2062-66 (Report of the Committee on Revenue and Finance ***, Section 1—State Revenue Power) (hereinafter cited as Proceedings).

The report of the Committee on Revenue and Finance made it clear that the provision of section 2 of article IX of the Constitution was not made to duplicate the limitation on the taxing power contained in the equal protection clause. The explanation of section 2 in the report states:

"Classification is essential. It is also essential that the General Assembly be bound by a *standard of reasonableness*. The federal due process and equal protection clauses provide *a minimum standard*. [Citation.] The Committee believes, however, that Illinois taxpayers *should receive added protection in the state constitution*.

*** The Committee recommendation leaves the Illinois courts free to apply standards of reasonableness which are *more rigorous than those developed under the federal constitution* ***." (Emphasis added.) (7 Proceedings 2062, 2074.)

Although the report of the Committee expressed the intent that the court construe the limitations on the taxing power contained in section 2 of article IX as being broader than that of the equal protection clause, it also expressed its intention that the courts should not severely limit the State's broad power to tax. (7 Proceedings 2062, 2066.) If the court applies an excessively narrow construction to the power to classify granted in section 2, the purpose of the affirmation of the State's broad revenue powers in section 1 will be subverted. (Young, *The Revenue Article of the Illinois Constitution of 1970—An Analysis and Appraisal*, 1972 U. Ill. L.F. 312, 317.) Thus, as stated in the language quoted from the explanation of section 2 of the Committee's report

set out above, in classifying for taxation purposes the General Assembly must be bound by the standard of reasonableness which offers the taxpayer protection beyond that of the equal protection clause. We therefore conclude that the holdings of *Carmichael v. Southern Coal & Coke Co.*, *Madden v. Kentucky*, *Allied Stores of Ohio, Inc. v. Bowers*, and *Lehnhausen v. Lake Shore Auto Parts Co.*, that the burden is on the party attacking the tax classification *to negate every conceivable basis which might support it*, is not an appropriate test in determining the validity of a classification under section 2 of article IX of the Illinois Constitution of 1970. The appellate court majority, in upholding the classification in *Searle*, relied upon the equal protection test.

In considering classification of nonproperty tax in light of the uniformity requirement of the 1970 Constitution (Ill. Const. 1970, art. IX, sec. 2) and of the 1870 Constitution (Ill. Const. 1870, art. IX, sec. 1), this court has stated the appropriate test to be that the classification must be based on *a real and substantial difference between the people taxed and those not taxed, and that the classification must bear some reasonable relationship to the object of the legislation or to public policy.* (*People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 480; *Klein v. Hulman* (1966), 34 Ill. 2d 343, 346-47; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 535-36; *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 46; *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 71-72; *Continental Illinois National Bank & Trust Co. v. Lenckos* (1984), 102 Ill. 2d 210, 216.) In some of the cases that have applied this test equal protection questions were involved, as well as the uniformity requirement, and the court made no distinction in applying the above test. Also, some of the cases applying this test were decided prior to the effective date of the 1970 Constitution, and the cases decided since the effective date

of the 1970 Constitution have relied generally upon those cases applying this test that were decided prior to 1970. As we have noted above, the intention expressed in section 2 of article IX of the 1970 Constitution was that a broader limitation on the legislative power to classify for nonproperty tax purposes was intended to be included in the language of section 2 than the limitation of the equal protection clause. Therefore, under our 1970 Constitution we cannot hold that the limitations on classification of the equal protection clause and of article IX, section 2, are to be judged by the same standards. We therefore examine the 1977 amendment to section 203(e)(2)(E) of the Illinois Income Tax Act in light of the test stated in the cases last cited, and conclude that there is no real and substantial difference between a corporation which is a member of an affiliated corporate group that elects to file a Federal *consolidated* income tax return and a corporation which is a member of an affiliated corporate group that *does not* elect to file a consolidated corporate Federal income tax return. We further find that the classification bears no reasonable relationship to the object of the legislation or to public policy.

Although the legislature in the Illinois Income Tax Act adopted Federal taxable income as a starting point for calculating State corporate income tax, it did not enact a specific statutory provision allowing a deduction for net operating loss or providing for a carryback or carryforward of a net operating loss to other taxable years. The Illinois act did, however, allow the State taxpayer the advantage of deducting a net operating loss and carrying back or carrying forward the unused portion of the deduction only insofar as such items were, for Federal income tax purposes, deducted from the gross income of the taxpayer to arrive at Federal taxable income.

Prior to 1976, section 172 of the Internal Revenue Code (26 U.S.C. sec. 172 (1970)) permitted net operating loss deductions to be carried back three years from the taxable year in which the loss was sustained and then carried forward a maximum of five years until the entire loss was absorbed. In 1976 Congress amended section 172 to allow taxpayers to relinquish the carryback period for net operating losses and to elect to carry forward such losses. (26 U.S.C. sec. 172(b)(3)(C) (1976).) In 1977, section 203(e)(2)(E) of the Illinois act was amended, as we previously indicated, to require a corporate taxpayer's *separate taxable income* to be determined as if the election provided by section 172(b)(3)(C) of the Code had been in effect for all tax years in which the taxpayer was a member of an affiliated group of corporations filing a *consolidated* Federal income tax return. Thus, any such corporation reflecting a net operating loss on its separate State return was deemed to have relinquished the entire carryback period. (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E).) As stated in legislative debate, the 1977 amendment was designed (1) to "eliminate the need to process amended returns for a corporate taxpayer suffering a loss if that taxpayer is part of an affiliated group" and (2) to "prevent such a taxpayer from using the election otherwise provided for in the Internal Revenue Code simply to reduce his Illinois taxes to the maximum extent possible." 80th Ill. Gen. Assem., House Proceedings, June 24, 1977, at 60-61 (statement of Rep. Campbell).) This statement as to the purpose of the amendment is far from clear. Our consideration of the amendment will focus on the objectives as urged by the Department in this case.

The Department has not been consistent in its interpretation and application of the amendment to section 203(e)(2)(E). Soon after its enactment, the Department

issued Illinois Income Tax Bulletin 1977—1, which stated of the 1977 amendment:

"This provision will not apply, however, when the affiliated group for its consolidated return incurs a net operating loss; in such circumstances each member will be deemed to have made the election only if the parent company has so elected."

Thus, the Department's position as to this amendment was that the corporate taxpayer, who was a member of an affiliated group which filed a consolidated Federal return, is deemed, by virtue of the amendment, to have elected to carry its operating loss forward *only if the affiliated group incurred no loss*. If the affiliated group had incurred a loss, the amendment, according to the Department's interpretation at that time, required that the member corporation carry the loss forward and not back only if the parent affiliated group had elected to do so. The Department administered the 1977 amended section 203(e)(2)(E) in that manner for nearly three years, processing returns and paying claims for refunds resulting from losses that had been carried back to members of affiliated corporate groups that had filed consolidated returns. However, for tax years after 1980 the Department changed its position and gave the 1977 amendment the construction it now urges in this court. Thereafter, in 1985, section 203(e)(2)(E) was again amended by the legislature, deleting the mandatory carry forward "deemed election" for corporate members of an affiliated group which files a consolidated Federal return for years after December 31, 1986. (See Ill. Rev. Stat., 1986 Supp., ch. 120, pars. 2—203(e)(1), 2—203(e)(2)(E).) The holding of this case will be applicable only to those members of affiliated corporate groups which elected to file consolidated returns for tax years 1980 through 1986. Thus, the alleged discriminatory classification has been rescinded.

Relying in part on the intent expressed in legislative debate, the Department asserts three objectives which, it contends, the 1977 amendment was designed to achieve: (1) to clarify an ambiguity created by the 1976 amendment to the Internal Revenue Code which granted a Federal taxpayer the election of either carrying back or carrying forward a net operating loss deduction (26 U.S.C.A. sec. 172(b)(3)(E) (1982) (redesignated section 172(b)(3)(C), see 26 U.S.C.A. sec. 172(b)(3)(C) (Supp. 1987))); (2) for the administrative convenience and cost-saving purpose of eliminating the need to process amended tax returns; and (3) to generate income for the State by preventing a taxpayer who filed a Federal consolidated return from using the carryback provision to reduce his Illinois income tax.

As to the first stated objective of clarifying an ambiguity created by the 1976 amendment to the Internal Revenue Code, we find the Department's argument unpersuasive. It appears to this court that the ambiguity, if any, created by the amendment to the Internal Revenue Code would be clarified by the original construction placed on the 1977 amendment to section 203(e)(2)(E) of the Illinois income tax law by the Department. If an affiliated group shows a loss on its Federal tax return, that loss, under the Internal Revenue Code, is automatically carried back unless the parent corporation elects to carry it forward. (26 U.S.C.A. secs. 172(b)(1), 172(b)(3)(C) (1982).) The separate member corporations of the affiliated group do not make the election whether or not to carry the loss forward. That election must be made by the parent corporation. (Treasury Election Laws 1.1502—77(a) (1985).) Following the 1976 amendment to the Internal Revenue Code, which authorized taxpayers to elect to carry the loss forward instead of back, if the Federal affiliated return reflected a loss that loss would be carried back unless the parent corporation

elected to carry it forward and each member corporation would accordingly treat its share of the loss in the same manner on its State return. It was only in situations where the affiliated group showed no loss on the consolidated Federal return, but a member corporation showed a loss on its *pro forma* return filed with the State, that an ambiguity arose as to whether the loss of the member corporation should be carried back or forward. The construction the Department originally placed on the 1977 amendment to section 203(e)(2)(E) that in such cases the taxpayer is deemed to have elected to carry the loss forward would appear to achieve the objective of clarifying an apparent ambiguity. The construction which the Department now asserts does not. In both of the consolidated cases now before us the parent corporation sustained a tax loss which it did not elect to carry forward under the Internal Revenue Code. For clarification purposes there is no need to apply the amendment to such cases. Under the prior construction the member corporations were bound by the election of the parent.

The second objective which the Department argues the 1977 amendment was designed to achieve is that of eliminating the need to process amended tax returns. The Department argues that if the taxpayer carries his loss back, he must file an amended Illinois tax return for the prior years to which the loss is applied. These amended returns must then be processed by the Department. However, the Department asserts that if the loss is carried forward, it will simply be reflected by the taxpayer on the returns for future years.

The objective for which the Department argues is only partially achieved by this construction of the amendment. As previously noted, Illinois tax returns filed by corporate members of affiliated groups are virtually identical whether the corporation is a member of a group that files a consolidated Federal return or

whether the corporations filed separate Federal returns. However, the corporations which file separate Federal returns are not precluded from carrying their losses back and may file amended Illinois returns for the prior years to which the losses may be applied. These amended returns must be processed by the Department. It is only those corporations of an affiliated group filing a consolidated return whose amended Illinois returns need not be processed under the Department's current construction of section 203(e)(2)(E). This is an arbitrary means of reducing the administrative burden of the Department. There is no real and substantial difference between the two classes of corporations that is rationally related to the stated objective of reducing the number of amended returns that must be processed. The same objective could be achieved by denying corporations the right to carry the loss back based on any number of arbitrary considerations such as corporations having their offices in certain geographical areas, or corporations whose names start with certain letters of the alphabet.

The Department, under its asserted administrative convenience argument, has urged that budgetary considerations also justify classification of the two classes of corporations differently. The Department points out that if amended returns for prior years are filed, it will necessitate paying refunds which have not been anticipated or budgeted, whereas by carrying the loss forward, the revenue for future years will be decreased, which can be anticipated in the budgetary process.

Of course, there are always a large number of claims for refunds by individuals and corporations resulting from the filing of amended returns which must be anticipated in the budgetary process. We are not convinced that carrying the losses of this class of corporate taxpayer forward will lessen the budgetary problems because the losses to be carried forward in most instances

will not be known until after the budgetary process for the next year will have been completed or substantially completed. Aside from that consideration, however, we find the same absence of a rational relationship between this objective and the classification under consideration that existed between this classification and the above objective of reducing the number of amended returns that must be processed.

The last objective of the 1977 amendment urged by the Department is that the amendment was intended to generate income for the State by preventing a taxpayer who is a member of an affiliated group that filed a Federal consolidated return from using the carryback election to reduce his Illinois taxes. The Department argues that by filing a consolidated return the taxpayer has gained certain tax advantages under Federal tax regulations. He should not therefore be permitted to enjoy further tax benefits by carrying his losses back for Illinois tax purposes. It is difficult to fault a taxpayer for following the tax law option most beneficial to him. Presumably, those options were provided for just such a purpose. It is safe to say that those affiliated groups that have elected *not* to file consolidated returns also made such decisions after considering the benefits to be gained. The Department argues, and the appellate court majority implied, that absent the prohibition against carryback application of the loss, the taxpayer of this affiliated group would somehow be receiving double benefits. (140 Ill. App. 3d. 248, 255.) The appellate court majority and the Department rely heavily on *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102. We do not find *Caterpillar* helpful. In that case the taxpayer, under Federal law, had the option of deducting the foreign tax as a credit from its total Federal tax due or of taking the foreign tax as a deduction, thereby reducing its taxable income. The taxpayer had claimed the tax as a credit on

its Federal tax return and then attempted to claim it as a deduction from taxable income on its Illinois return. This court held that the taxpayer could not manipulate the application of the foreign tax in that manner. If the election had been made to claim the foreign tax as a credit on its Federal tax return, the corporation was bound by that election. It could not further reduce the taxable income as established by the Federal return by claiming the foreign tax as a deduction from taxable income on its Illinois return. (84 Ill. 2d 102, 126.) *Caterpillar* would be relevant in our case only if the question before us were whether the taxpayer could elect to apply his loss as a carryback on his Federal return and then apply it as a carry forward on his State return, or vice versa. *Caterpillar* would require that in arriving at taxable income, the taxpayer be bound by the election made on his Federal return. In fact the construction of the amendment to section 203(e)(2)(E) contended for by the Department would reach a result inconsistent with that reached in *Caterpillar*; that is, a loss carryback could be applied on the Federal return to arrive at one figure for taxable income, whereas an entirely different figure for taxable income would be computed on the Illinois return by carrying the loss forward.

There are no double benefits derived by the taxpayers in our case arising from inconsistent positions taken by the taxpayers in filing their Federal returns as against that taken in filing their State returns as there were in *Caterpillar*. There is nothing wrong with the taxpayer maximizing his benefits under the Federal tax laws, whether those benefits are derived from filing consolidated or separate returns. *Caterpillar* only holds that a taxpayer cannot use one option provided by Federal law for arriving at taxable income for Federal tax purposes and another option in arriving at taxable income for State tax purposes. Federal taxable income is the start-

ing point upon which State tax liability is computed (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 506). *Bodine* also held that there is no proper set of "Illinois deductions" and that net-operating-loss deductions are relevant to the computation of Illinois tax liability only insofar as this deduction enters into the computation of base income under the relevant provisions of the Act (81 Ill. 2d 502, 510).

That there is no real and substantial difference between the two classes of corporations is illustrated by an example set forth in the brief of *Caterpillar Tractor Company*.

> "Corporation A and Corporation B are both U.S. corporations engaged in business in Illinois and each corporation is required to file an Illinois income tax return. Corporations A and B are engaged in exactly the same business and generate identical amounts of taxable income and loss. Each corporation incurred a net operating loss for the year 1982.
>
> Corporation A is a member of an affiliated corporate group that elects to file a federal *consolidated* income tax return. Corporation B's affiliated corporate group *does not* elect to file a federal consolidated return.
>
> The Illinois tax returns filed by Corporations A and B for the 1982 year appear identical, as do all supporting documents attached to the Illinois returns. Corporation A attaches to its Illinois return a copy of a "pro forma" federal return reflecting results of its operations for the year. Corporation B attaches to its Illinois return, a copy of the federal return that it filed for the current year." (Emphasis added.)

As Justice McMorrow cogently observed in her dissent in this case in the appellate court:

> "My analysis reveals no differences between [these] two groups which would validate the disparate treatment which section 2—203(e)(2)(E) accords them. Such discrimination is not based upon a company's organizational structure, since both [Corporation A and Corporation B]

are members of an affiliated corporate group. It cannot be based upon a company's profits or losses, because [both Corporation A and Corporation B] generate identical amounts of taxable income or loss[.] [However,] only [Corporation A] which files a consolidated Federal income tax return is denied the opportunity to carry back its net operating loss. Despite the fact that both groups are identically situated in all material respects, the affiliate filing a consolidated Federal income tax return [Corporation A] is penalized by being denied the ability to carry back its losses, even though the affiliate which does not file a consolidated Federal return [Corporation B] is free to carry back or carry forward such losses." (140 Ill. App. 3d 248, 264.)

Thus, at the starting point for Illinois income tax computation, that is, Federal taxable income, we find both classes of corporate taxpayers referred to in the above illustration exactly the same as shown by their Federal tax returns. However, the members of one class are permitted to carry their net operating losses back, while, under the Department's construction of section 203(e)(2)(E), members of the other class are required to carry their net operating loss forward. This is achieving the goal of maximizing State income in an arbitrary and capricious manner. There is no real and substantial difference between these two classes rationally related to this stated objective.

For the reasons herein stated, we hold that the construction of the 1977 amendment to section 203(e)(2)(E) of the Illinois Income Tax Act contended for by the Department violates article IX, section 2, of the Illinois Constitution of 1970 as to corporate taxpayers of an affiliated group which filed a consolidated Federal income tax return reflecting a net operating loss, which operating loss the parent company did not elect to carry forward. The judgment of the circuit court of Peoria County is reversed in cause no. 63228, *Caterpillar Trac-*

*tor Co. v. Johnson,* and the cause is remanded to the circuit court of Peoria County. In cause no. 63151, *Searle Pharmaceuticals, Inc. v. Department of Revenue,* the judgments of the circuit court of Cook County and the appellate court are reversed, and the cause is remanded to the circuit court of Cook County.

*63151 — Judgments reversed;*
*cause remanded.*
*63228 — Judgment reversed;*
*cause remanded.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.