NATIONAL SCHOOL BUS SERVICE, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (2nd Division) No. 1—97—3560

Opinion filed December 15, 1998.

Harold E. Collins and Michael R. Collins, both of Collins & Collins, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Brian F. Barov, Assistant Attorney General, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

In this case we must decide whether rolling stock used occasionally in interstate commerce qualifies for exemption from the use tax. See 35 ILCS 105/1 *et seq.* (West 1992). The Department of Revenue (the Department) denied the exemption National School Bus Service sought, and the circuit court affirmed the Department's ruling. National appeals. The Mid-West Truckers' Association, Inc., and Illinois Movers' and Warehousemen's Association submitted a brief as *amici curiae*, supporting National.

The Interstate Commerce Commission issued a certificate granting National authority to operate as a common carrier. National primarily provides children transportation to and from school, and on school field trips or for extracurricular activities. To supplement the income from school transportation, National also provides charter trips for hire to private groups. Some of the field trips and extracurricular activities require trips to other states, and the private groups occasionally charter trips to other states or to the airport to start trips to other states.

■ National purchased 25 buses from out-of-state suppliers during July and August 1990. National paid no use tax, claiming that section 3—55 of the Use Tax Act (the Act) (35 ILCS 105/3—55 (West 1992)) exempted it from taxation. That section provides:

> "To prevent actual or likely multistate taxation, the tax imposed by this Act does not apply to the use of tangible personal property in this State under the following circumstances:
>
> ***
>
> (b) The use, in this State, of tangible personal property by an interstate carrier for hire as rolling stock moving in interstate commerce *** as long as so used by the interstate carriers for-hire."

In 1994 the Department completed an audit of the use of the 25 buses. National gave the Department invoices for every trip in interstate commerce taken by any of the 25 buses from August 1990 through June 1993. The invoices showed a total of 389 such trips. National presented no data concerning the total number of trips the buses made, and it refused the Department's request for data on the revenue earned from intrastate and interstate trips. However, National supplied total mileage data, from which the Department concluded that the buses traveled 5.01% of their miles in interstate trips, including trips to the airport for which the bus never left the state. National made no claim that its other trips involved interstate commerce in any way.

The Department's auditor found that 12 of the buses, for at least one complete tax year, made no interstate trips. All the buses averaged

five trips in interstate commerce per bus per year. The auditor reasoned that the trips in interstate commerce probably averaged more miles per trip than the intrastate trips on which the buses mostly took children to and from school. Therefore, he concluded that far fewer than 5% of all trips involved interstate commerce. The auditor also assumed, from National's refusal to provide the requested data, that far less than 5% of its revenue came from trips involving interstate commerce.

The Department had a long-standing policy of denying the rolling stock exemption unless the taxpayer was "able to show that it transport[ed] persons or property for hire in interstate commerce on a 'regular and frequent' basis." In light of this policy, the auditor wrote, "The taxpayer has not provided the necessary information in the way of records to substantiate the exemption should be allowed. Therefore, the exemption is disallowed." He calculated a tax due of $56,005, plus penalties and interest due of $35,996, for a total of $92,001.

For its protest, National paid the tax due to stop the accumulation of penalties and interest. The Department reaffirmed its interpretation of the rolling stock exemption, and therefore it upheld the auditor's decision. The court affirmed the Department.

National claims that the Department's ruling conflicts with the holding of *Burlington Northern, Inc. v. Department of Revenue*, 32 Ill. App. 3d 166, 336 N.E.2d 170 (1975). The Department contends that the ruling is mandated by the holding of *First National Leasing & Financial Corp. v. Zagel*, 80 Ill. App. 3d 358, 399 N.E.2d 994 (1980). The parties agree that the two cases can be harmonized, but they argue for different interpretations of the cases.

In *Burlington Northern*, the railroad used passenger cars and engines in both intrastate and interstate trips. The Department denied the rolling stock exemption, in part because the taxpayer faced no possibility of multiple taxation. The appellate court rejected this reasoning, holding that the legislature

> "intended to exempt rolling stock moving in interstate commerce from being subject to the use tax *regardless* of the potentiality of multiple taxation. *** While it is true that grants of tax exemption are to be given a strict interpretation against the taxpayer and in favor of the taxing power [citations], even a strict interpretation of this statute does not justify making the rolling stock exemption contingent on eligibility for the credit exemption." (Emphasis in original.) *Burlington Northern*, 32 Ill. App. 3d at 173-74.

The court also held that the taxpayer need not show that the primary purpose of the rolling stock involved interstate commerce. Such a standard "would exclude from the coverage of the exemption ***

instrumentalities *substantially* but not primarily used in interstate commerce ***. No doubt exists that such results would unduly burden interstate commerce." (Emphasis in original.) *Burlington Northern*, 32 Ill. App. 3d at 175.

The court noted that 13% of the movement of the cars took them across state lines, and intrastate trips involved interstate commerce.

> "[W]here passengers or goods traveling from one State to another are transported as part of that interstate journey by an agency which carries them solely within one State, the intrastate portion of the journey becomes interstate. *** The interstate nature of the mail and express packages carried by the plaintiff similarly imparts interstate status to the plaintiff's activities within Illinois. *** Combining plaintiff's '13%' of actual physical movement across State lines with the interstate movement conferred on plaintiff as carrier of interstate traffic, we hold *** that plaintiff should not be denied an exemption ***." *Burlington Northern*, 32 Ill. App. 3d at 176.

National and *amici* claim that in *Burlington Northern* the court established that absolutely any use of rolling stock in interstate commerce, no matter how insignificant, qualifies for the rolling stock exemption from the use tax. We disagree. The court in *Burlington Northern* held only that the specific usage in interstate commerce proved in that case was "significant enough to merit exemption." *Burlington Northern*, 32 Ill. App. 3d at 169.

In *Zagel* the taxpayer sought the rolling stock exemption from equipment used to remove or rerail railroad cars. The taxpayer's employees testified to occasional use in interstate commerce. The Department found the oral testimony incompetent and denied the exemption due to inadequate documentation. The trial court reversed this decision, finding the oral testimony competent evidence because the statute did not require written evidence of interstate use.

The appellate court agreed with the trial court that the statute did not require written records. *Zagel*, 80 Ill. App. 3d at 360. But the court held:

> "We do not find the general accounts of these witnesses, who said that goods were infrequently carried across the State lines by the taxpayer's vehicles, to be a sufficient indication of interstate commerce." *Zagel*, 80 Ill. App. 3d at 359.

Because the taxpayer did not present sufficient evidence to establish entitlement to the exemption, the court reinstated the Department's tax assessment.

National and *amici* argue that the oral testimony in *Zagel* was insufficient to show any use of the rolling stock in interstate commerce. Again we disagree. The court held the oral evidence competent,

and that evidence showed some use in interstate commerce, but that evidence did not establish a level of usage significant enough to merit exemption. Thus, both *Burlington Northern* and *Zagel* require the taxpayer to prove some significant level of usage in interstate commerce to warrant a rolling stock exemption.

■ The Department interpreted the opinion and the concurrence in *Zagel* to require evidence of regular and frequent use in interstate commerce, and its letter rulings have consistently reflected that understanding. National argues that the Department has misconstrued the statute, and *amici* contend that the Department has effectively enforced an unpublished rule, in violation of the Administrative Procedure Act. 5 ILCS 100/5—35 (West 1992). This court affords substantial deference to an administrative agency's interpretation of a statute that the agency administers and enforces. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202-03, 545 N.E.2d 695 (1989). "A significant reason for deferring *** is that the agency makes informed decisions based on its experience and expertise." *County of Will v. Illinois State Labor Relations Board*, 219 Ill. App. 3d 183, 185, 580 N.E.2d 884 (1991).

■ The Use Tax Act says only that the tax does not apply to "the use *** of tangible personal property *** for hire as rolling stock moving in interstate commerce." 35 ILCS 105/3—55 (West 1992). As the Department noted, the Act does not establish any particular level of usage required to qualify for the exemption. The Department has required regular and frequent use in interstate commerce for the exemption. "[N]ot all statements of agency policy must be announced by means of published rules. When an administrative agency interprets statutory language as it applies to a particular set of facts, adjudicated cases are a proper alternative method of announcing agency policies." *Sparks & Wiewel Construction Co. v. Martin*, 250 Ill. App. 3d 955, 968, 620 N.E.2d 533 (1993). In this case, as in *Sparks & Wiewel*, the Department merely interpreted the statute and applied it to the facts. It did not violate the Administrative Procedure Act.

■■ Our supreme court interpreted a more explicit tax exemption in *McKenzie v. Johnson*, 98 Ill. 2d 87, 456 N.E.2d 73 (1983). There the legislature allowed an exemption for "property used exclusively for religious purposes." Ill. Rev. Stat. 1981, ch. 120, par. 500.2. Although tax exemptions are strictly construed against the taxpayer (*City of Lawrenceville v. Maxwell*, 6 Ill. 2d 42, 47, 126 N.E.2d 671 (1955)), the court said:

> "[P]roperty satisfies the exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose; '[i]f property is devoted, in a primary sense, to a religious

purpose, the fact that it is incidentally used for secular purposes will not destroy the exemption.' " (Emphasis in original.) *McKenzie*, 98 Ill. 2d at 98, quoting *First Congregational Church v. Board of Review*, 254 Ill. 220, 224 (1912).

Thus, a statute that requires exclusive use for religious purposes allows some incidental secular uses, even when the statute is narrowly construed in favor of taxation. The appellate court applied the reasoning of *McKenzie* to interpret a statute exempting property exclusively used for charitable purposes; the court held that the statute exempted property whose noncharitable use was merely incidental to charitable use. *Resurrection Lutheran Church v. Department of Revenue*, 212 Ill. App. 3d 964, 972, 571 N.E.2d 989 (1991).

Illinois courts have similarly interpreted the charitable use exemption in the Retailers' Occupation Tax Act (35 ILCS 120/2—5(11) (West 1994)), which exempts from tax personal property sold to an "institution organized and operated exclusively for charitable *** purposes." The appellate court held:

> "An exclusively charitable purpose need not be interpreted literally as the entity's sole purpose; it should be construed to mean the primary purpose, but not a merely incidental or secondary purpose or effect. [Citation.] If a substantial purpose or activity of the claimant is not charitable, religious, or educational, it cannot be said to be organized and operated exclusively for charitable, religious, or educational purposes within the meaning [of the statute]." *Gas Research Institute v. Department of Revenue*, 154 Ill. App. 3d 430, 436, 507 N.E.2d 141 (1987).

National claims that the Use Tax Act should be interpreted to permit taxation only if rolling stock is used exclusively in intrastate commerce, and any use in interstate commerce qualifies for the exemption. The Act does not say this, as it sets no explicit level of use required for the exemption. But even if the Act expressly required use exclusively in intrastate commerce, the statute, under the reasoning of *McKenzie* and *Gas Research*, would mean that the Department could tax the use as long as any use in interstate commerce was merely incidental or secondary to the use in intrastate commerce. Just as incidental use of property for noncharitable purposes does not destroy the exemption under the Retailers' Occupation Tax Act, an incidental use of rolling stock in interstate commerce will not destroy its taxability under the Use Tax Act.

The Department has construed the Act to require regular and frequent use of the rolling stock in interstate commerce. *Amici* contend that this standard is unconstitutionally vague. This argument did not arise in the trial court, so it is waived for appeal. *Leone v. City of*

*Chicago,* 156 Ill. 2d 33, 38, 619 N.E.2d 119 (1993); *In re Petition to Adopt T.I.S.,* 224 Ill. App. 3d 475, 480, 586 N.E.2d 690 (1991).

Amici also contend, as did National at trial, that the Act, as the Department interprets it, creates an unconstitutional classification by distinguishing rolling stock used regularly and frequently in interstate commerce from that so used only irregularly and infrequently.

> "In considering classification of nonproperty tax in light of the uniformity requirement \*\*\*, this court has stated the appropriate test to be that the classification must be based on *a real and substantial difference between the people taxed and those not taxed, and that the classification must bear some reasonable relationship to the object of the legislation or to public policy."* (Emphasis in original.) *Searle Pharmaceuticals, Inc. v. Department of Revenue,* 117 Ill. 2d 454, 468, 512 N.E.2d 1240 (1987).

The statute, under the Department's interpretation, distinguishes rolling stock that is used only in intrastate commerce, or that has irregular and infrequent use in interstate commerce, from rolling stock regularly and frequently used in interstate commerce.

A substantial difference in the frequency and regularity of use in interstate commerce directly implicates the object of the legislation. As the legislature stated in the exemptions section of the Act, the exemptions are designed to "prevent actual or likely multistate taxation." 35 ILCS 105/3—55 (West 1992); see *Nutrition Headquarters, Inc. v. Department of Revenue,* 106 Ill. 2d 58, 62-63, 477 N.E.2d 235 (1985) (statement of purpose helps guide interpretation of use tax exemptions). Rolling stock regularly and frequently used in interstate commerce is far more likely to incur tax in other states. See *Quill Corp. v. North Dakota,* 504 U.S. 298, 313-15, 119 L. Ed. 2d 91, 107-08, 112 S. Ct. 1904, 1913-14 (1992). Our supreme court upheld, against constitutional challenges, the similar exemption for property used exclusively for religious purposes, as interpreted to exempt property whose secular use is merely incidental. *McKenzie,* 98 Ill. 2d at 94-99.

National and amici have not met their burden of proving that the statute, as the Department construes it, violates the constitution. See *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority,* 172 Ill. 2d 243, 250-51, 665 N.E.2d 1246 (1996). The statute, so interpreted, is no more impractical or unworkable than the exemption for property used for charitable purposes, which remains exempt despite noncharitable use as long as the noncharitable use is secondary, or merely incidental, to the charitable use. See *Illinois Institute of Technology v. Skinner,* 49 Ill. 2d 59, 66, 273 N.E.2d 371 (1971).

In 1984 our legislature adopted an amendment to the Act which specified that the rolling stock exemption applied to vehicles used

exclusively within Illinois, if the vehicles carry persons or property on journeys either to or from other states. 35 ILCS 105/3—60 (West 1994). Thus, the taxpayer need not prove the vehicle ever left Illinois. Under National's interpretation of the Act, any individual use marginally connected with interstate commerce, at any time in the life of the vehicle, suffices for the exemption of rolling stock of an interstate carrier for hire. This interpretation would virtually eliminate the statutory restriction of the exemption to stock "moving in interstate commerce." 35 ILCS 105/3—55(b) (West 1992). We will not direct the Department to so construe the statute.

National further maintains that the exemption here must be construed as is the rolling stock exemption in the Retailers' Occupation Tax Act (35 ILCS 120/2—5(12) (West 1994)). We agree. National presented no case law, and we are aware of none, indicating that the Department has applied any interpretation for the retailers' occupation tax exemption other than the interpretation applied for the use tax exemption. In light of the judicial interpretation of the charitable exemption in section 2—5(11), we believe the Department will adopt an interpretation of section 2—5(12) which is consistent with its interpretation of the exemption at issue here.

Finally, National argues that the denial of the exemption contravened the manifest weight of the evidence. National presented evidence that 5% of the miles over which the buses drove occurred in 389 trips connected to interstate commerce. However, National presented no evidence of the total number of trips the buses took, and it refused the Department's request for information concerning revenues from the trips connected with interstate commerce and the total revenues from all trips. The Department concluded that National failed to prove its entitlement to the exemption. The conclusion is not contrary to the manifest weight of the evidence. See *Zagel*, 80 Ill. App. 3d at 359.

The case law interpreting the rolling stock exemption has required some substantial use of the rolling stock in interstate commerce. The Department has therefore required proof of regular and frequent such use of the rolling stock. The statutory interpretation does not violate *Burlington Northern*, as the Department does not require proof of taxation by other states, nor does it require proof that the primary use is for interstate commerce. National and *amici* have not shown adequate grounds for overturning the Department's interpretation of the Act. National did not present sufficient evidence to show that its use of rolling stock was regular and frequent, or any more than incidental.

Accordingly, the judgment of the trial court upholding the decision of the Department is affirmed.

Affirmed.

GORDON, P.J., and RAKOWSKI, J., concur.