In *re* PETITION TO ADOPT T.I.S., a Minor.

First District (4th Division)   No. 1—90—3357

Opinion filed December 31, 1991.

Richard B. Kapnick and Mark B. Blocker, both of Sidley & Austin, of Chicago, for appellant.

Thomas P. Hanrahan, of Chicago, for appellees.

Steven Paul McSloy and William Y. Chan, both of Cravath, Swaine & Moore, of New York, New York, for *amicus curiae*.

JUSTICE McMORROW delivered the opinion of the court:

W.S., the biological mother of T.I.S., a minor, appeals from the trial court's refusal to set aside her consent to the child's adoption by R.W. and E.W. W.S. argued that her consent to the adoption was invalid, because she did not execute the consent form before a judge, as required under the Indian Child Welfare Act (hereinafter the ICWA) (25 U.S.C. §1901 *et seq.* (Supp. II 1978)). The trial court determined that the ICWA was not applicable to W.S.'s consent to adoption of the child, because the Indian tribe of which W.S. is a member is not an "Indian tribe" under the definition of that term as stated in the ICWA. See 25 U.S.C. §1903(8) (Supp. II 1978).

On appeal, W.S. argues that the trial court's refusal to apply the ICWA to the tribe of which she is a member violates the equal protection clause of the fourteenth amendment to the United States Constitution. (U.S. Const., amend. XIV.) In an *amicus curiae* brief, the Indian tribe of which W.S. is a member claims that it is an "Indian tribe" under the ICWA. We conclude that the exclusion of W.S.'s tribe from the requirements of the ICWA does not violate equal protection. We also conclude that the argument of *amicus* is waived on appeal. Accordingly, we affirm the trial court's judgment in the instant cause.

The record reveals the following pertinent facts. W.S. gave birth to a baby boy, T.I.S., in November 1989 and agreed to place him for adoption in the home of R.W. and E.W. On January 29, 1990, W.S. signed a final consent to adoption form in the offices of the Department of Supportive Services of the circuit court of Cook County, and R.W. and E.W. filed a petition to adopt T.I.S. On the same day, the trial court entered an order that acknowledged W.S.'s final consent to the minor's adoption, terminated W.S.'s parental rights in the child, made T.I.S. a ward of the court, and granted temporary custody of the child to the adoptive parents, R.W. and E.W.

In July 1990, W.S. filed a petition to vacate her consent to adoption of T.I.S. In this petition, W.S. alleged that she is a member of the Chippewa Indian tribe. W.S. claimed that as an American Indian, her consent to adoption had to be obtained before a judge in accordance with the ICWA. (25 U.S.C. §1913 (Supp. II 1978).) R.W. and E.W., the adoptive parents, filed a motion to dismiss W.S.'s petition to vacate, arguing that W.S. is a member of the West Bay Band (Chippewa) tribe, which is not an "Indian tribe" under the ICWA.

Following briefing and argument, the trial court granted the adoptive parents' motion to dismiss W.S.'s petition to vacate. A day later, the trial court entered a final order of adoption. W.S. appeals.

W.S. challenges the constitutionality of the definition of "Indian tribe" under the ICWA as applied to the tribe of which she is a member. On appeal, W.S. acknowledges that she is a member of the West Bay Band Indian tribe, located in Canada.

The ICWA was enacted in order to redress the evils associated with Indian children being taken from their families and placed in non-Indian homes. (*Mississippi Band of Choctaw Indians v. Holyfield* (1989), 490 U.S. 30, 32, 104 L. Ed. 2d 29, 36, 109 S. Ct. 1597, 1600.) This separation deprived the children of their cultural heritage and interfered with the tribes' function as autonomous communities. (*Mississippi Band of Choctow Indians*, 490 U.S. at 34-35, 104 L. Ed. 2d at 37-38, 109 S. Ct. at 1601.) The ICWA specifically incorporates these concerns into the expression of Congressional findings embodied therein. 25 U.S.C. §1901 (Supp. II 1978).

The ICWA sets forth particular procedures for the removal of an Indian child from his or her family, including the requirement that a biological mother's voluntary consent to adoption be obtained before a judge. (25 U.S.C. §1913 (Supp. II 1978).) In order to apply the terms of the ICWA, the child whose placement is at issue must

be an "Indian child." (See *In re Stiarwalt* (1989), 190 Ill. App. 3d 547, 546 N.E.2d 44.) Under the ICWA, an Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. §1903(4) (Supp. II 1978).) In addition, an "Indian tribe" is defined as follows:

"[A]ny Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians, including any Alaska Native village ***." 25 U.S.C. §1903(8) (Supp. II 1978).

W.S. asserts that this definition, as applied in the instant cause, creates an impermissible classification based upon national origin. According to W.S., although the ICWA ostensibly applies to all Indian citizens, section 1903(8) treats her differently simply because her tribe, the West Bay Band, is now located in Canada. W.S. claims that the circuit court's failure to apply the Act to her tribe is particularly irrational given the fact that the tribe originated in the United States and relocated to Canada only after the United States government "forced" the tribe off United States land in 1836. W.S. also observes that to deny her the benefits of the ICWA illogically contradicts the Act's stated purpose of preventing the destruction of Indian families and the separation of Indian children from their parents.

■ We are unable to conclude that the ICWA's definition of "Indian tribe" constitutes an impermissible classification based upon national origin. The ICWA applies when the child is or may be enrolled as a member of an Indian tribe that is eligible for the services of the Department of the Interior. The classification based upon the Indian tribe's eligibility for Department of Interior services reflects the unique relationship between the United States government and Indian tribes located within the boundaries of this country. The United States Supreme Court has repeatedly upheld classifications designed to preserve this relationship. (*E.g., Washington v. Confederated Bands & Tribes of the Yakima Indian Nation* (1979), 439 U.S. 463, 58 L. Ed. 2d 740, 99 S. Ct. 740; *Delaware Tribal Business Committee v. Weeks* (1977), 430 U.S. 73, 51 L. Ed. 2d 173, 97 S. Ct. 911; *United States v. Antelope* (1977), 430 U.S. 641, 51 L. Ed. 2d 701, 97 S. Ct. 1395; *Fisher v. District Court* (1976), 424 U.S. 382, 47 L. Ed. 2d 106, 96 S. Ct. 943.) As

the Court stated in *Morton v. Mancari* (1974), 417 U.S. 535, 41 L. Ed. 2d 290, 94 S. Ct. 2474:

> "Literally every piece of legislation dealing with Indian tribes and reservations, and certainly all legislation dealing with the [Bureau of Indian Affairs], single out for special treatment a constituency of tribal Indians living on or near reservations [in the United States]. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 USC) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized." 417 U.S. at 552, 41 L. Ed. 2d at 302, 94 S. Ct. at 2483-84.

Based upon this reasoning, the Supreme Court in *Morton* concluded that "[a]s long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." 417 U.S. at 555, 41 L. Ed. 2d at 303, 94 S. Ct. at 2485.

In the instant cause, the ICWA's classification is reasonably connected to preserving the family unit of those having membership in American Indian tribes located in the United States, and in guarding against the removal of Indian children from their families within the United States in order to place those children in non-Indian families. (See 25 U.S.C. §1901(4) (Supp. II 1978) (Congressional finding that ICWA passed in order to respond to circumstance that "alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies).)" W.S. has acknowledged that the West Bay Band is not eligible for services of the Department of the Interior, and that the tribe is not located in the United States. Thus, the instant record does not reveal that W.S. is a member of an Indian tribe that shares the "unique relationship" with the United States government that prompted the enactment of the special protections embodied in the ICWA. We cannot say that the failure to apply the provision of the ICWA to the case at bar violates the equal protection clause of the United States Constitution. See *In re Armell* (1990), 194 Ill. App. 3d 31, 42-43, 550 N.E.2d 1061.

In an *amicus curiae* brief, the West Bay Band acknowledges that it is not presently eligible for services provided by the Department of Interior, and that it is not classified as eligible to receive such benefits from the Department. (See Fed. Register 52829-32

(Dec. 29, 1988) (listing of Indian tribes eligible for services of Department of Interior).) *Amicus* claims that the West Bay Band would be eligible for services provided by the United States Department of the Interior if it were to apply for such eligibility (see 25 C.F.R. §83 (1991) (procedures for establishing American Indian tribe's eligibility for services from Department of Interior)), particularly in view of the treaties between the United States and Indian tribes to which the West Bay Band allegedly has a successor interest. (See, *e.g.*, Treaty of Amity, Commerce and Navigation between the United States and Great Britain, 8 Stat. 116 (1794) (Jay Treaty); Explanatory Article to the Jay Treaty, 8 Stat. 130 (1796); Treaty of Peace and Amity between the United States and Great Britain, 8 Stat. 218 (1814); Articles of a Treaty between the United States and the Ottawa and Chippewa Nations, 7 Stat. 491 (1836).) On this basis, *amicus* contends that the West Bay Band falls within the definition of "Indian tribe" under the ICWA.

This argument was not made to the trial court, however, and is therefore waived on appeal. (See *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 508-09, 524 N.E.2d 561.) Moreover, whether an Indian tribe is recognized as eligible for services from the Department is a question of fact, and it is the biological parent's burden to prove that the Indian tribe of which she is a member falls within the eligibility requirements of the Department. (*In re Stiarwalt*, 190 Ill. App. 3d at 552.) Because the biological mother in the instant cause has acknowledged the West Bay Band's ineligibility for services from the Department of the Interior, we decline to address the argument of *amicus* upon review.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JOHNSON, JJ., concur.