the relation-back issue, but, since the predicate fact for the first presumption was rebutted and the State thereby lost its benefit, the issue of relating the test back to the time of operation, the second presumption, never arose. The defendant's introduction of the .079 test presented evidence that the .083 test result was not accurate. Considering the evidence of the two test results before it, the court could not conclude by a preponderance of the evidence that defendant had a BAC of .08 or more at the time he was tested. In arriving at the conclusion that defendant had met his burden of production to rebut the § 1205(g)(4) presumption, the court appeared to take into account both the existence of the .079 test result and the fact the .083 test result was within a ten-percent margin of error of the legal threshold of .08. The State's failure to prove by a preponderance of the evidence that defendant's BAC was .08 or above, the first of the two rebuttable presumptions, ended the court's inquiry before reaching the second presumption.

The State contends that the court erred by considering the ten-percent margin of error specified by regulation.[2] The applicable regulation provides: "Analytical instrumentation shall be capable of determining the blood or breath alcohol concentration of the person sampled with an accuracy of plus or minus 10%." Vermont Dep't of Health, Breath and Blood Alcohol Analysis § C(I) in 4 Code of Vermont Rules 13140003-002. In deciding for defendant, the court stated that the

.083 test was within the acknowledged margin of error of the legal threshold of .08. To the extent the court may have implied that the ten percent margin of error raises the legal threshold to .088, it was incorrect. The statute does not require the State to establish that a defendant's BAC was above .088 (.08 plus a ten-percent margin of error).

We conclude, however, that the court merely relied upon the ten percent margin of error to provide an explanation for two different test results in the absence of any other explanation. Hence, there was no error. The court was faced with two test results, one above the legal limit and one below that limit. The State presented no evidence to explain the different results, except an affidavit indicating that the Datamaster is capable of determining BAC within an accuracy of plus or minus ten percent. Although not submitted for this purpose, the information could, of course, explain the disparate test results. In view of this explanation and the .079 test result, there was no error in concluding that the State failed to meet its burden of proving a BAC of .08 by a preponderance of the evidence.

*Affirmed.*

### In re A.J.

[733 A.2d 36]

No. 98-537

April 1, 1999. Mother appeals from a family court judgment terminating her residual parental rights. She contends (1) that the court erred in failing to notify the Micmac and Abenaki tribes that an Indian child was involved in the proceeding pursuant to the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1963 (ICWA); and (2) that the exclusion of the Micmac and Abenaki tribes from the ICWA violates

---

[2] Another regulation requiring analytical instrumentation to "be capable of analyzing replicate samples of breath containing a known amount of alcohol with a precision of plus or minus 5% from their mean" is not applicable here. See *State v. Brooks*, 162 Vt. 26, 32-33, 643 A.2d 226, 230 (1993) (five-percent-deviation rule is laboratory calibration requirement, not field performance criterion).

their right to equal protection of the law. We affirm.

The facts underlying this TPR proceeding are not at issue and need not be recounted in detail. Several weeks prior to the TPR hearing, mother sent a letter to the court claiming that she and the minor's father were of Native American descent, and requesting that the matter be transferred to a Native American court pursuant to the ICWA. At the hearing, mother's counsel represented that mother claimed descent from both the Abenaki and Micmac Indian tribes. The court ruled that the ICWA did not apply to either tribe, and that notification of the tribes was therefore not required. Following the hearing, the court entered judgment terminating mother's residual parental rights. This appeal followed.

The ICWA requires notification of the parent, the child's tribe, or, if the identity or location of the tribe cannot be determined, the Bureau of Indian Affairs (BIA), "where the court knows or has reason to know that an Indian child is involved." 25 U.S.C. § 1912(a). The act defines an Indian child as a minor who is either a member of an Indian tribe or eligible for membership in an Indian tribe. See *id.* § 1903(4). An Indian tribe is defined as any Indian tribe or group of Indians recognized as eligible for services provided by the BIA. See *id.* § 1903(8).

It is undisputed that neither the Abenaki nor the Micmac Indian tribes has been recognized as eligible for services by the BIA. See *In re M.C.P.*, 153 Vt. 275, 288, 571 A.2d 627, 634 (1989); *Abenaki Nation of Mississquoi v. Hughes*, 805 F. Supp. 234, 242 (D. Vt. 1992), *aff'd*, 990 F.2d 729 (2d Cir. 1993). Accordingly, as we held in *M.C.P.*, "[n]othing would be gained by notifying [the tribes]. They have no special information for the court nor do they have an interest protected by the ICWA." 153 Vt. at 288, 571 A.2d at 634. Thus, the court here correctly ruled that notification was not required under the ICWA.

Assuming that notice was not compelled by the terms of the act, mother further contends that the statutory exclusion of tribes not formally recognized by the federal government violates their right to equal protection of the law under the Fourteenth Amendment.* The United States Supreme Court has established that the appropriate standard in assessing the validity of such classifications is whether they are "'tied rationally to the fulfillment of Congress' unique obligation toward the Indians.'" *Delaware Tribal Bus. Comm. v. Weeks*, 430 U.S. 73, 85 (1977) (quoting *Morton v. Mancari*, 417 U.S. 535, 555 (1974)). Thus, in *Delaware* the high court upheld against an equal protection challenge a statute that distributed funds to a federally recognized tribe, but excluded a nonrecognized branch of the tribe. See *id.* at 86.

Applying this rational-basis standard, at least one court has specifically upheld the exclusion of nonfederally recognized tribes under the ICWA. See *In re T.I.S.*, 586 N.E.2d 690 (Ill. App. Ct. 1991). In *T.I.S.*, the biological mother in an adoption proceeding claimed that the exclusion of a Canadian branch of the Chippewa tribe that was not an Indian tribe under the ICWA constituted an impermissible classification based upon national origin. The court rejected the challenge, holding that because the mother was not "a member of an Indian tribe that shares the 'unique relationship' with the United States government that prompted the enactment of the special protections

---

* Although mother also invokes the Common Benefits Clause of the Vermont Constitution, ch. I, art. 7, the federal statute controls over the state constitutional provision. See *Schaffer v. Leimberg*, 62 N.E.2d 193, 197-98 (Mass. 1945). We note further that the State in this case has not challenged mother's standing to assert a constitutional claim on behalf of the Abenaki and Micmac tribes.

embodied in the ICWA," the failure to apply the provision of the ICWA to her case did not violate the federal Equal Protection Clause. *Id.* at 693.

As the Illinois court noted, Congress's express purpose in enacting the ICWA was to preserve the families and culture of those Indian tribes whom the United States historically, "through statutes, treaties, and the general course of dealing . . . has assumed the responsibility for [their] protection and preservation." 25 U.S.C. § 1901(2). The United States has not assumed this kind of trust relationship with either the Abenaki or the Micmac tribes, and thus does not have the same historical responsibility to preserve the cultural and social standards in those tribes that it does with respect to federally recognized tribes. Accordingly, we agree with the court's conclusion in *T.I.S.* that the ICWA exclusion of non-recognized tribes does not violate the Equal Protection Clause.

*Affirmed.*

Motion for reargument denied April 27, 1999.

In re Joseph S. WOOL, Esq.

[733 A.2d 747]

No. 99-064

May 10, 1999. Pursuant to the recommendation of the Professional Conduct Board filed February 17, 1999, and approval thereof, it is hereby ordered that Joseph S. Wool, Esq. be publicly reprimanded for the reasons set forth in the Board's report attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

Attorney Wool shall also be placed on probation for 18 months with the conditions set forth in the attached report; however, the potential sanction in Condition 1 of immediate suspension is modified to require appropriate prior review by the Board. The period of probation shall begin on June 1, 1999.

**Final Report to the Supreme Court**

Respondent has been a member of the bar of the State of Vermont for more than sixty years. This disciplinary proceeding is a result of his conduct in representing three different clients.

PCB File No. 94.03

Respondent represented MB in the summer of 1992 in connection with some post-divorce litigation. MB paid respondent an advance of $1000 in July of 1992. MB was not satisfied with the quality of the representation he received during 1992.

In the spring of 1993, MB realized that he would need to pursue some additional issues in court. He wanted to hire another lawyer to help him. He contacted respondent and asked for a refund of the $1000.

Respondent told MB that he had already provided services in excess of the $1000 advance. MB asked for an accounting as to how the $1000 fee had been spent.

Respondent prepared three documents, none of which properly detailed the scope of respondent's services to MB. Each is simply a list of charges for services performed on certain dates, without specification as to how much time respondent spent on each of these services. Further, all of the letters are inconsistent.

The first letter claimed that MB owed respondent $230. The second, written some two weeks later, claimed that $525 in services had been rendered, but noted the $1000 paid on account. This would have left a balance of $475 owed to MB. Subsequently, respondent amended this bill, adding an additional $345 in charges for services rendered in June and July of 1993. MB had not retained respondent to represent him in June or July of 1993.