LEROY WALICZEK *et al.*, Plaintiffs-Appellants, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee.

First District (5th Division)   No. 1—99—4128

Opinion filed November 9, 2000.—Rehearing denied November 30, 2000.

Sugarman & Horwitz, of Chicago (Stephen B. Horwitz, of counsel), for appellants.

Burke, Burns & Pinelli, Ltd., of Chicago (Lawrence E. Flood and Mary Patricia Burns, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiffs Leroy and Dolores Waliczek appeal from an order of the circuit court on administrative review which upheld the determination of the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board) that section 6—142(f) of the Illinois Pension Code (Code) (40 ILCS 5/6—142(f) (West 1998)) will prevent Dolores, as Leroy's current spouse, from receiving a widow's annuity pursuant to section 6—141.1(c) of the Code (40 ILCS 5/6—141.1(c) (West 1998)) if Leroy should predecease her. On appeal, plaintiffs contend that section 6—141.1(c), enacted subsequent to section 6—142(f), is control-

ling, and in the event that Leroy should predecease Dolores, Dolores would be entitled to receive a widow's annuity pursuant to section 6—141.1(c).

Leroy Waliczek had been employed as a fireman by the Chicago fire department (CFD) for almost 30 years when in 1981 he went on medical leave following lung surgery. In 1982 the Board awarded Leroy an occupational disease disability benefit. While Leroy was receiving disability benefits, he married Dolores. In 1988, Leroy resigned from the CFD and, as a result, he became eligible for and received a monthly age and service retirement annuity, which replaced his disability benefits. At the same time, the Board also refunded several thousand dollars that Leroy had contributed in spousal contributions "on account of no spouse," despite Leroy's contention that he notified the Board of his marriage to Dolores.

In 1998, Leroy asked the Board for a determination regarding whether Dolores would be eligible to receive a widow's annuity pursuant to section 6—141.1(c) of the Code. Section 6—141.1 in pertinent part provides:

> "Notwithstanding the other provisions of this Article, the widow of a fireman who dies on or after June 30, 1984, while receiving a retirement annuity or while an active fireman with at least $1\frac{1}{2}$ years of creditable service, may elect to have the amount of widow's annuity calculated in accordance with this Section.
> ***
> (c) If the deceased fireman was receiving a retirement annuity at the time of his death, the widow's annuity shall be equal to 50% of the amount of such retirement annuity at the time of the fireman's death." 40 ILCS 5/6—141.1 (West 1998).

The Board informed plaintiffs that Dolores would not be entitled to receive any benefits if Leroy should predecease her based on section 6—142(f) of the Code. Section 6—142 in pertinent part provides:

> "The following wives or widows have no right to annuity from the fund:
> * * *
> (f) A wife or widow who married the fireman while he was in receipt of disability benefit or disability pension from this fund, unless he returned to the service subsequent to the marriage and remained therein for a period or periods aggregating one year, or died while in service." 40 ILCS 5/6—142 (West 1998).

Plaintiffs subsequently requested a hearing before the Board.

At the hearing, plaintiffs did not dispute that Dolores and Leroy were married while Leroy was receiving disability benefits. They also did not dispute that if Leroy had predeceased Dolores while he was still receiving disability benefits, section 6—142(f) would have

prevented Dolores from receiving a widow's annuity. However, plaintiffs contended that because Leroy no longer received disability benefits, but received an age and service annuity, Dolores was entitled to receive a widow's annuity in accordance with section 6—141.1(c).

After the hearing, the Board determined that section 6—142(f) prevented Dolores from receiving a widow's annuity if Leroy predeceased her.

Leroy filed a complaint for administrative review contending that the Board's decision was clearly erroneous and against the manifest weight of the evidence because section 6—141.1(c) entitled Dolores to receive a widow's annuity if Leroy predeceased her. The circuit court affirmed the Board's decision and held that Dolores was not entitled to receive a widow's annuity because she was barred by section 6—142(f).

Plaintiffs now appeal contending that section 6—141.1, enacted subsequent to section 6—142, is controlling and would entitle Dolores to receive a widow's annuity in accordance with section 6—141.1(c). Plaintiffs further contend that the language in section 6—141.1, which begins "[n]otwithstanding the other provisions of this Article" (40 ILCS 5/6—141.1(a) (West 1998)), evidences the legislature's intent that this section is controlling over the other sections in Article 6, namely section 6—142(f).

■ On review, the findings of fact of an administrative agency are *prima facie* true and correct and will not be disturbed unless contrary to the manifest weight of the evidence. *Chicago Transit Authority v. Doherty*, 291 Ill. App. 3d 909, 912 (1997). However, an issue of statutory construction raises a question of law subject to *de novo* review. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). An agency's interpretation of statutory language and application of undisputed facts to that language are generally given deference, because of the experience and expertise gained through enforcement of the statute involved. *National School Bus Service, Inc. v. Department of Revenue*, 302 Ill. App. 3d 820, 825 (1998). Finally, we review the administrative decision rather than the circuit court's decision. *Calabrese v. Chicago Park District*, 294 Ill. App. 3d 1055, 1065 (1998).

■ The cardinal rule of statutory construction is to ascertain the intent of the legislature. *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987). Courts should look first to the language of the statute itself as the best indication of the intent of the drafters. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151 (1985). The words of the statute are to be given their ordinary and popularly understood meaning. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215 (1983). When

the language chosen by the legislature is clear and unambiguous, the statute must be enforced as enacted and the court will not resort to outside sources to construe its meaning. *County of Du Page*, 109 Ill. 2d at 151.

Plaintiffs' argument relies significantly on *Toner v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 259 Ill. App. 3d 67 (1994), in which this court construed a provision similar to section 6—141.1 in the Policemen's Annuity and Benefit Fund (Policemen's Fund) of the Code. In *Toner*, the plaintiff was seeking review of the calculation of her widow's annuity made by the Retirement Board of the Policemen's Fund. This court considered whether section 5—136.1 (40 ILCS 5/5—136.1 (West 1998)) controlled over other conflicting provisions in the Code. Section 5—136.1 states in pertinent part:

> "Notwithstanding the other provisions of this Article, the widow of a policeman (1) who retires on or after January 1, 1986, and subsequently dies while receiving a retirement annuity *** may in lieu of any other widow's annuity have the amount of widow's annuity calculated in accordance with this Section." 40 ILCS 5/5—136.1 (West 1998).

This court determined that "notwithstanding" meant "in spite of" and, therefore, section 5—136.1 was an exception to all other sections in Article 5 and controlled over other sections of Article 5 with which it conflicted. *Toner*, 259 Ill. App. 3d at 70. This court concluded that because plaintiff satisfied each of the requirements of section 5—136.1 and because that section controlled over other conflicting sections, the plaintiff was entitled to have her widow's annuity calculated in accordance with that section. *Toner*, 259 Ill. App. 3d at 71.

●3 We are persuaded by plaintiffs' reliance on *Toner* and determine that Dolores would be entitled to receive a widow's annuity pursuant to section 6—141.1(c). Section 6—141.1 (40 ILCS 5/6—141.1 (West 1998)) begins with "[n]otwithstanding the other provisions of this Article," as does section 5—136.1 in *Toner*. Interpreting this section in accordance with this court's interpretation in *Toner*, "notwithstanding" means "in spite of" and therefore is an exception to all other sections in Article 6 and controls over any other section of Article 6 with which it conflicts.

The legislature could have easily worded the beginning of section 6—141.1 to read "notwithstanding the other provisions of this section," instead of "[n]otwithstanding the other provisions of this Article." If the statue had used "section" instead of "[a]rticle," section 6—141.1 would have been an exception only to section 6—141, and not for all the sections in Article 6. Because the legislature chose to use the word "[a]rticle," we can only presume that it intended sec-

tion 6—141.1 to be an exception to other sections in Article 6 with which it may conflict.

We must also determine whether section 6—141.1 applies to plaintiffs. In the event that Leroy predeceases Dolores, Dolores will be the widow of a fireman who died on or after June 30, 1984, while receiving a retirement annuity. Because Dolores will satisfy each of the requirements of section 6—141.1 if Leroy predeceases her, she would be entitled to receive a widow's annuity calculated in accordance with that section. The Board's determination to the contrary is not supported by the statutory language.

We are unpersuaded by the Board's argument that section 6—141.1 is an amendment to section 6—141 (40 ILCS 5/6—141 (West 1998)) of the Code and merely changes the calculation of a widow's annuity from 40% to 50%. The Board argues that section 6—141.1 should be read as a continuation of section 6—141 and not as an exception to all other sections in Article 6, because the legislature did not intend such a fundamental change in the law. The Board points to the legislative comments when Bill 164 was introduced for approval in the Illinois House. See 84th Ill. Gen. Assem., House Bill 164, 1985 Sess. The bill was introduced as "provid[ing] technical corrections for a widow's formula for the Chicago firefighters." 84th Ill. Gen. Assem., House Proceedings, May 24, 1985, at 285 (statements of Representative Terzich). We cannot construe this sole statement as encompassing the legislature's intent for the entire section of 6—141.1 because the statute does more than merely change the calculation of widow's annuity from 40% to 50%. Had the legislature adopted section 6—141.1 to read "notwithstanding the other provisions of this section," instead of "[a]rticle," we would agree with defendant's interpretation. However, if we are to give the words of the statute their ordinary and popularly understood meaning, we must reject defendant's proposed interpretation. Interpreting section 6—141.1 as such does not effectively repeal section 6—142(f), as the Board contends. Section 6—142(f) will still apply to individuals who marry firemen who receive disability benefits and become widows while the firemen continued to receive disability benefits.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

CAMPBELL, P.J., and O'BRIEN, J., concur.