THIRD DIVISION
May 9, 2007

No. 1-06-1315

| | | |
|---|---|---|
| NANCY FLEMING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 04 CH 21071 |
| THE RETIREMENT BOARD OF THE FIREMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF CHICAGO, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | )) | Mary Anne Mason, |
| | | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Nancy Fleming appeals from an order of the circuit court of Cook County on administrative review, which upheld the determination of the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board) that plaintiff was entitled to receive a widow's annuity pursuant to section 6-142(B) of the Illinois Pension Code (Code)(40 ILCS 5/6-142(B) (West 2004)) upon her repayment of the refund awarded to her husband's estate. On appeal, plaintiff contends the Board erred: (1) by requiring plaintiff to repay the refund; (2) by requiring plaintiff to repay the refund with interest;

and (3) by determining that she was not entitled to a widow's annuity as of the date her husband died.

Plaintiff is the widow of William Fleming (Fleming). Fleming began his employment as a fireman with the Chicago fire department in 1963. In 1982, Fleming suffered a heart attack while at work. In 1983, he was granted duty disability benefits and never returned to work. At that time, Fleming was married to his first wife, Jeanne, with whom he had two children. Jeanne died in 1994. On August 6, 1995, Fleming married plaintiff. On December 25, 1996, at the age of 62, Fleming died. In 1997, plaintiff received an ordinary death benefit payment in the amount of $6,800 from the Firemen's Annuity and Benefit Fund of Chicago (Fund), as Fleming's designated beneficiary. Plaintiff was denied a widow's annuity based on section 6-142(f) of the Code (40 ILCS 5/6-142(f) (West 1996)). At that time, section 6-142(f) provided that a widow who married a fireman while he was receiving disability benefits was not entitled to receive a widow's annuity from the Fund.

Section 6-142 provided in part:

"The following wives or widows have no right to annuity from the fund:

* * *

(f) A wife or widow who married the fireman while he was in receipt of disability benefit or disability pension from this fund, unless he returned to the service subsequent to the marriage and remained therein for a period or periods aggregating one year, or died while in service." 40 ILCS 5/6-142(f) (West 1996).

2

As a result, about $57,000 was paid to Fleming's estate, pursuant to section 6-162 of the Code (40 ILCS 5/6-162 (West 1996)).

Section 6-162 provided in part:

"If the amount accumulated in the account of a deceased unmarried fireman from salary deductions for annuity purposes after the effective date, including interest, has not been paid to him or his parent or parents, and in the case of a deceased married fireman to him and his widow, in form of annuity or benefit before the death of the last survivor of such persons, the remaining amount if any, without interest, shall be paid in the following order of precedence: (a) to the administrator or executor of the fireman's estate; (b) for burial expenses of the fireman; and (c) to his heirs according to the law pertaining to administration of estates * * *." 40 ILCS 5/6-162 (West 1996).

Fleming's son, Mark Fleming, was appointed as executor of Fleming's estate and the assets were distributed according to Fleming's will. The will, which had not been updated since Fleming's first marriage, provided that all his assets would go to his first wife, Jeanne, and then to his children.

In January 2004, the Illinois General Assembly amended section 6-142(f), which became section 6-142(A)(f) (40 ILCS 5/6-142(A)(f) (West 2004)). The text of subsection (f) remained the same, but subsection (f) was now subject to section 6-142(B), which allowed for certain widows to receive an annuity. The amendment

provided in part:

"(A) Except as provided in subsection (B), the following wives or widows have no right to annuity from the fund:

(B) Beginning on January 16, 2004, * * * the limitation on marriage during disability under subdivision (A)(f) no longer appl[ies] to a widow who was married to the deceased fireman for at least one year immediately preceding the date of death, regardless of whether the deceased fireman is in service on or after the effective date of Public Act 93-654 or this amendatory Act of the 93rd General Assembly; except that this subsection (B) does not apply to the widow of a fireman who received a refund of contributions for widow's annuity under Section 6-160, unless the refund is repaid to the Fund, with interest at the rate of 4% per year, compounded annually, from the date of the refund to the date of repayment." 40 ILCS 5/6-142(A), (B) (West 2004).

In 2004, plaintiff contacted Fund officials asking whether she was now entitled to receive a widow's annuity pursuant to the amendment. Plaintiff was informed that she was entitled to receive a widow's annuity pursuant to the amendment, but would have to refund the money that was paid to Fleming's estate, with interest, before she could receive an annuity. Correspondence from Fund officials to plaintiff on December 21, 2004, indicated that they relied on section 6-158 of the Code (40 ILCS 5/6-158 (West 2004)) for requiring plaintiff to repay the refund with interest.

Section 6-158 provided in part:

"(c) A fireman who receives a refund forfeits all rights to any annuity or benefit from the fund, for himself and for any other person who might benefit through him because of his service, provided he shall retain the right to credit for any such service, for the purpose of computing his total service if he re-enters service before age 57, becomes a beneficiary of the fund and makes repayment of the refund with interest." 40 ILCS 5/6-158(c) (West 2004).

Plaintiff paid the refund, with interest, to the Fund and she began receiving a monthly widow's annuity of $2,285.96, which she will receive for the rest of her life. However, she filed a complaint in the circuit court of Cook County for administrative review, challenging the Board's determination that she was required to repay the refund before receiving a widow's annuity.

On appeal, plaintiff first contends that the Board erred by requiring her to repay the refund awarded to her husband's estate. Plaintiff contends that section 6-142(B) only requires repayment of a refund given pursuant to section 6-160, and because the refund to her husband's estate was not given pursuant to that section, there is no authority for requiring her to repay the refund.

On review, an issue of statutory construction raises a question of law subject to *de novo* review. Lucas v. Lakin, 175 Ill. 2d 166, 171 (1997). The cardinal rule of statutory construction is to ascertain the intent of the legislature. Stewart v. Industrial Comm'n, 115 Ill. 2d 337, 341 (1987). Courts should look first to the language of the statute. County of DuPage v. Graham, Anderson, Probst & White, Inc., 109 Ill. 2d 143,

151 (1985). The words of the statute are to be given their ordinary and popularly understood meaning. Kozak v. Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago, 95 Ill. 2d 211, 215 (1983). An agency's interpretation of statutory language and application of undisputed facts to that language is generally given deference, because of the experience and expertise gained through enforcement of the statute involved. National School Bus Service, Inc., v. Department of Revenue, 302 Ill. App. 3d 820, 825 (1998).

Initially, we note that plaintiff argues that the Board's authority for requiring her to repay the refund was section 6-159. However, her assertion is not supported by the record. The Board's letter to plaintiff indicated that she was required to repay the refund pursuant to section 6-158. Nevertheless, section 6-158 is not entirely applicable to plaintiff. Subsection (c) provides that a fireman who receives a refund forfeits all rights to an annuity or benefit unless he repays the refund to the Fund with interest. Clearly, Fleming did not receive the refund; the refund was paid to his estate.

Here, the refund to Fleming's estate was made pursuant to section 6-162. That section does not have a repayment provision as do many of the other sections in Article 6. This is presumably because that section concerns a deceased fireman, so the distribution of any funds would be considered final because the fireman was deceased. However, when the legislature enacted section 6-142(B), which provided that widows such as plaintiff were now entitled to an annuity, they did not include a repayment provision for any refund made pursuant to section 6-162. The only repayment provision

6

included was for a refund made pursuant to section 6-160. That provision provided that any refund previously received must be repaid to the Fund, with interest, if a widow wanted to receive an annuity. It appears that the legislature did not account for a situation such as plaintiff's where a refund was given to a fireman's estate pursuant to section 6-162, but because of the amendment to section 6-142(B), the fireman's widow was now entitled to an annuity. Nevertheless, sections 6-158 and 6-159, which we admit are not entirely applicable to plaintiff, both provide that a fireman who receives a refund of his widow's annuity contributions must repay the refund before his widow can receive an annuity. Despite the lack of a specific repayment provision in section 6-142(B) for a refund made pursuant to section 6-162, we believe that it was the intent of the legislature for any widow who became eligible to receive an annuity to repay any refund either she or the fireman or the fireman's estate had previously received. As stated above, Fleming did not receive the refund, it went to his estate. However, if we look to sections 6-158 and 6-159 for guidance, it would logically follow that any refund must be repaid before a widow can receive an annuity. If plaintiff were to receive an annuity in addition to the refund that was paid to Fleming's estate, the Fund would be paying Fleming's benefits twice, albeit to different parties. We do not believe this could have been the legislature's intention when it enacted section 6-142(B). Therefore, we find that the Board properly ordered plaintiff to repay the refund to Fleming's estate if she wanted to receive a widow's annuity.

Next, plaintiff contends that the Board erred by requiring plaintiff to repay the

refund with interest. Plaintiff argues, as she does with respect to her first contention, that because section 6-142(B) did not have a repayment provision for a refund given pursuant to section 6-162, there was no authority for the Board to require her to repay the refund with interest.

As previously stated, we acknowledge that the amendment to section 6-142(B) does not have a repayment provision for a refund made pursuant to section 6-162. However, again we look to the language of the statute to ascertain the intent of the legislature. The repayment provisions in sections 6-158 and 6-159 require that repayments be made with interest. And, section 6-142(B) also provides that a refund made pursuant to section 6-160 be repaid with interest. Therefore, we believe that the intent of the legislature was that any repayment to the Fund be made with interest. Therefore, we find that the Board properly ordered plaintiff to repay the refund with interest.

Lastly, plaintiff contends that she was entitled to receive a widow's annuity as of the date her husband died. Plaintiff's contention is not based on section 6-142(B) of the Code; rather, it is based on section 6-141.1(b)(2) of the Code. Despite the fact that plaintiff did not object to the Fund's actions at the time of Fleming's death, she now contends that she was entitled to receive a widow's annuity pursuant to section 6-141.1(b)(2) when her husband died.

Section 6-141.1 provided in part:

"(a) Notwithstanding the other provisions of this Article, the widow of a

8

fireman who dies on or after June 30, 1984, while receiving a retirement annuity or while an active fireman with at least 1½ years of creditable service, may elect to have the amount of widow's annuity calculated in accordance with this Section.

(b) If the deceased fireman was an active fireman at the time of his death and had at least 1½ years of creditable service, the widow's annuity shall be the greater of (1) 30% of the salary attached to the rank of first class firefighter in the classified career service at the time of the fireman's death, or (2) 50% of the retirement annuity the deceased fireman would have been eligible to receive if he had retired from service on the day before his death." 40 ILCS 5-6-141.1(a), (b) (West 1996).

Plaintiff argues that at the time of her husband's death, he was an active fireman with at least 1 ½ years of creditable service. Plaintiff further argues that the phrase "notwithstanding the other provisions of this Article" (40 ILCS 5/6-141.1(a)(West 1996)) should be interpreted as meaning that section 6-142(f) cannot preclude her from receiving an annuity pursuant to section 6-141.1(b)(2).

We must first analyze section 6-141.1(b)(2) and determine whether plaintiff was entitled to a widow's annuity pursuant to that section at the time of her husband's death. There is no doubt that Fleming had at least 1½ years of creditable service at the time of his death. However, there is a question whether Fleming could be considered an "active fireman" at the time of his death. The Code defines "[a]ctive fireman" as "[a]ny

9

person employed and receiving salary as a fireman."  40 ILCS 5/6-109 (West 1996).

Fleming was employed as a fireman at the time of his death, but he was receiving

disability benefits rather than a salary.  His disability benefits were calculated as a

percentage of his salary, but pursuant to the Code, he received benefits, not a salary.

Therefore, we can only conclude that because Fleming was not an "active fireman" at

the time of his death, plaintiff was not entitled to a widow's annuity pursuant to section

6-141.1(b)(2).

Plaintiff argues that the Board and legislature have "always" considered duty

disabled firemen to be on "active status," citing to Barry v. Retirement Board of the

Firemen's Annuity & Benefit Fund of Chicago, 357 Ill. App. 3d 749 (2005).  We

disagree.  The use of the term "active status" appears in the opinion as a quote from

the defendant's brief.  Moreover, the term "active status" does not appear in Article 6 of

the Code.  Despite plaintiff's contention that "it is undisputed that Fleming was on

'active status' while on duty disability benefits," we find no support for such a finding.

As stated above, there is no such term as "active status" in Article 6 of the Code.  The

Code only defines an "active fireman," and pursuant to that definition, Fleming was not

an "active fireman" at the time of his death.

Plaintiff also relies on Waliczek v. Retirement Board of the Firemen's Annuity &

Benefit Fund of Chicago, 318 Ill. App. 3d 32 (2000), which interpreted section 6-

141.1(c), rather than section 6-141.1(b), upon which plaintiff relies.  Similar to plaintiff,

Dolores Waliczek married Leroy Waliczek while he was receiving disability benefits.

However, sometime thereafter, Leroy began receiving an age and service annuity from the Fund. This court determined that if Leroy were to predecease Dolores, she would not be precluded by section 6-142(f) from receiving a widow's annuity because section 6-141.1(c) provided that a widow was entitled to receive an annuity if her husband was receiving a retirement annuity at the time of his death. Waliczek, 318 Ill. App. 3d at 37. Waliczek is distinguishable because Fleming was receiving disability benefits at the time of his death and not a retirement annuity. Therefore, we find that the Board properly determined that plaintiff was not entitled to receive a widow's annuity at the time of her husband's death.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN, J., and CUNNINGHAM, J., concur.